IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD CONSTANT, | ) | |
|     Petitioner | ) | |
| | ) | |
|     v. | ) | Civil Action No. 11-0822 |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS, MICHAEL | ) | |
| WENEROWICZ (Superintendent), | ) | |
| WENDY SHAYLOR (Superintendent's | ) | |
| Assistant), | ) | |
|     Respondents | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

For the reasons set forth below, Edward Constant's Petition for Writ of Habeas Corpus will be denied in part and granted in part.

### A.  Double Jeopardy And Ineffective Assistance Of Counsel

Federal habeas relief is not warranted on petitioner's claim that trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for waiving a Double Jeopardy challenge to his retrial. After a guilty verdict but before sentencing, trial counsel successfully moved for a new trial based upon after discovered evidence that the tipstaff had improper and prejudicial communications with the jury during its deliberations. Petitioner now asserts that the tipstaff's conduct amounted to "quasi-judicial misconduct" serious enough to invoke the protections of the Double Jeopardy Clause and to bar retrial, and that effective counsel would have moved to dismiss the charges, rather than for a new trial.

The Court of Common Pleas of Allegheny County found counsel was not ineffective because a new trial, not dismissal of charges, was the appropriate remedy for the tipstaff's improper communication with the jury, and the Superior Court of Pennsylvania affirmed. The decision of the state courts was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, and was based upon a reasonable determination of the facts in light of the evidence presented in the state court proceedings. The Petition for Writ of Habeas Corpus will therefore be denied on this ground.

**B.    Right to a Public Trial – Jury Selection**

Petitioner also claims that the trial Court's closure of *voir dire* to his wife and the general public violated his Sixth Amendment right to a public trial. Jury selection is an integral and critical component of any criminal proceeding which must, presumptively, be open to the public and the press; while the Sixth Amendment right to public trial is not absolute and inflexible, closure is and should be the rare exception, and may not be ordered absent careful balancing of competing interests, consideration of alternatives to closure, and articulation of findings. *See Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 724 (2010).

The Court of Common Pleas prohibited petitioner's wife and the general public from attending his jury selection, although "the media" were permitted to attend, and the Superior Court endorsed the prohibition. Neither the trial Court nor Superior Court identified an overriding interest or a substantial reason that would suffice to justify their categorical exclusion of a spouse and the general public from jury selection, and their stated reason for closure is affirmatively contradicted by the state court records.

Because the Courts did not follow the substantive or procedural imperatives prescribed by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39 (1984) and *Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise I")*, 464 U.S. 501 (1984), the closure of *voir dire* to petitioner's wife and the public violated petitioner's Sixth Amendment right to a public trial. The decision of the Pennsylvania courts is contrary to, or an unreasonable application of, clearly established, long standing federal law, and, additionally, is based upon an objectively unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Petition for Writ of Habeas Corpus will therefore be granted on this ground.

II.      **BACKGROUND**

A.      **The Offenses, Convictions and Sentence**

At his second trial, petitioner was tried and convicted on February 2, 2005, by a jury in the Court of Common Pleas of Allegheny County, Pennsylvania, of two (2) counts of Criminal Attempt—Homicide, two (2) counts of Aggravated Assault—Serious Bodily Injury, one (1) count of Aggravated Assault—Causing Bodily Injury, and one (1) count of Recklessly Endangering Another Person. Petitioner was sentenced in the aggregate to a term of imprisonment of not less than 14½ years nor more than 29 years, and a ten year term of probation. The facts underlying the convictions are as follows.[1]

On May 26, 2002, Municipality of Mt. Lebanon Police Officers Daniel Rieg and Jeffrey Kite responded to a domestic disturbance at the residence of Edward and Susan Constant. When the police officers knocked on the door, petitioner answered; he was visibly angry, belligerent

---

[1] *See* Pennsylvania Superior Court Opinion on direct appeal, *Commonwealth v. Constant*, 925 A.2d 810, 813 (Pa. Super. 2007), for fuller statement of the underlying facts.

and hostile. Mrs. Constant joined the conversation in the doorway; she was also angry, and she told the officers to leave.

Before she could shut the door, petitioner reappeared and grabbed his wife from behind, causing her to fall to the floor. In the ensuing tumult, petitioner Constant left the front hallway, but soon returned with a .44 caliber magnum revolver, pointed the weapon directly at Officer Rieg and pulled the trigger. The bullet struck Officer Rieg in the chest, knocking him back through the doorway, onto the front porch and over the railing into the front yard. Fortunately, Officer Rieg's protective vest prevented the bullet from entering his body.

Officer Kite scrambled for cover as petitioner fired several more shots and advanced off the porch. Officer Rieg was able to pull his own weapon and fire twelve rounds, one of which struck Constant in his buttocks, causing him to fall to the ground, whereupon police officers subdued and arrested him. Petitioner's handgun contained six spent cartridges, indicating that it had been fired six times.

**B.    State Court Proceedings and Decisions**

**1.    Trial Proceedings in the Court of Common Pleas of Allegheny County**

**a.  First trial**

Petitioner's first trial ended with convictions on all charges except Simple Assault against his wife, on which he was acquitted. Following the verdict but prior to sentencing, a juror contacted trial counsel anonymously and informed him that the court's tipstaff had initiated and engaged in improper communications with the jury during its deliberations. Interviews with

other jurors confirmed that improper communications between the jury and the tipstaff had taken place during deliberations.

Petitioner filed a motion for a new trial and motion for recusal of the presiding judge. After a flurry of motions, briefs and an evidentiary hearing before the Administrative Judge of Criminal Division, the Court agreed that the tipstaff had engaged in improper and prejudicial conversation with the jury, and granted the motion for new trial. The motion to recuse the presiding judge was denied.

In granting the motion for a new trial, the Administrative Judge found that, although the tipstaff's comments to the jury were "not emotional or inflammatory in nature" and were not intended to prejudice petitioner, nevertheless her remarks were sufficiently prejudicial to petitioner to warrant a new trial. Prior to retrial, trial counsel filed a motion to dismiss the charges on Double Jeopardy grounds, and a motion to recuse the trial judge. That judge denied the motion to dismiss but eventually recused himself, and the case was then reassigned to another judge of the Court of Common Pleas. After an unsuccessful interlocutory appeal to the Superior Court of Pennsylvania from denial of the motion to dismiss, the Court scheduled the retrial.

### b. **Second trial**

Jury selection began on January 21, 2005, and lasted two (2) days. As is the customary practice in the Court of Common Pleas of Allegheny County, jury selection was by individual *voir dire* conducted by counsel in a common jury selection room, without the presiding judge. *See* Commonwealth's Answer to Petition for Writ of Habeas Corpus, (ECF No. 5), at 25.

Trial counsel's affidavit from state court post-conviction proceedings avers the following: Sometime during the mid-afternoon on the first day of jury selection, the presiding trial judge entered the anteroom immediately adjacent to the common jury selection room. Upon observing trial counsel speaking to Mrs. Constant, the judge ordered her to leave the jury selection room, stating that neither she nor the general public were permitted to be present, although members of the media could attend. At the end of the first day, trial counsel objected to Mrs. Constant's exclusion on the record. The Court affirmed its decision to exclude Mrs. Constant, and all members of the general public, from jury selection. No member of the public and no representative from the media were present on the second day. Petition for Writ of Habeas Corpus (docketed as Motion Under 28 U.S.C. § 2254 To Vacate And Set Aside Sentence By A Person In State Custody, (ECF No. 1) ("Section 2254 Motion")), Trial Counsel's Affidavit, Exhibit 6 (ECF No. 1-6) at ¶¶ 8, 10-11, 14; Jury *Voir Dire* Transcript, Exhibit 7 (ECF No. 1-7) at 165-172.

Counsel's affidavit describes the jury selection room as accommodating approximately 200 people, with many chairs and at least two tables, and a row of chairs against the wall to the right of the public doorway. Trial counsel further attests that, other than the prospective jurors, on the first day of jury selection only one local reporter and petitioner's wife were present and seated in the common jury selection room, and the "remaining chairs were unoccupied." Trial Counsel's Affidavit, Exhibit 6 (ECF No. 1-6) at ¶ 6.

The Commonwealth[2] concedes that Mrs. Constant had been excluded from jury selection, and does not dispute trial counsel's averments. Commonwealth's Answer to Petition for Writ of Habeas Corpus (ECF No. 5), at 24-27, 29-30. The description of jury selection set forth in the Commonwealth's Answer is consistent with counsel's affidavit, as is the transcript from *voir dire*, including the following exchange:

> TRIAL COUNSEL: Earlier I asked – my client's wife, Mrs. Constant, asked me is it okay to sit in the jury room, and I said the following to her –
>
> THE COURT: . . . I am not concerned about that. I understand what you did and why you did it. The bottom line is based on what has been going on. Unless they have specific approval and there is a reason for them to be there, they are not going to be there, and of course the press can come in, but members of the general public are not permitted in jury selection.
>
> TRIAL COUNSEL: Can I get your approval to have the wife sit in there?
>
> THE COURT: No.
>
> TRIAL COUNSEL: I said don't talk to anybody, just sit there and listen and don't say a word to anybody.
>
> THE COURT: Then what purpose is there for her being there? What purpose? If she is not going to participate in jury selection, which she isn't allowed there anyway, what purpose is there for her to be there?
>
> TRIAL COUNSEL: Because she loves her husband and wants to be there.
>
> THE COURT: I understand that.
>
> TRIAL COUNSEL: I want you to know that I told her that it is all right.

---

[2] Nominal respondents are the Pennsylvania Department of Corrections and Michael Wenerowicz and Wendy Shaylor, two of its Superintendents, but the real interested party is the Commonwealth of Pennsylvania. The Court will use the terms "respondents" and "the Commonwealth" interchangeably.

THE COURT: Don't worry about that. And I am not concerned about the fact that you told her that it was all right. Nobody asked me. If they had asked me I would have said no.

TRIAL COUNSEL: I thought it was a public thing.

THE COURT: It is public to the extent that the media is generally allowed to participate, but unless, which we do often as whole individual *voir dire* in an open courtroom where anyone can walk in, the public aspect of it is pretty much eliminated. We don't have space. All right. See you tomorrow.

Commonwealth's Answer to Petition for Writ of Habeas Corpus (ECF No. 5), at 25-26.[3]

The next day, trial counsel "note[d] for the record that Susan Constant is not in the room today because the judge, as he pointed out yesterday, and as we interacted in [the trial court's] courtroom, didn't let her in and the media isn't in here today either, although yesterday there was a reporter in there. So there is nobody here today." *Id.* at 26; Section 2254 Motion, Jury *Voir Dire* Transcript, Exhibit 7 (ECF No. 1-7).

On January 25, 2005, Mr. Constant's retrial commenced on the same charges as in his initial trial, save for the Simple Assault charge on which he had been acquitted. On February 2, 2005, the jury once again found Mr. Constant guilty of two (2) counts of Attempted Murder, two (2) counts of Aggravated Assault - Serious Bodily Injury, one (1) count of Aggravated Assault - Causing Bodily Injury and one (1) count of Recklessly Endangering Another Person. The trial Court denied Constant's post trial motion for a new trial. On the issue of exclusion of the public

---

[3] The trial Court's remark that the "bottom line is based on what has been going on" is not self-explanatory. This Court has reviewed the record of *voir dire,* in vain, searching for anything that might have been "going on." In any event, this is the only reference to something "going on," as neither the trial Court, Superior Court nor the Commonwealth in any of its state court or federal court briefing suggest anything was "going on" in jury selection or with Mrs. Constant, other than "lack of space."

from jury selection, including Mrs. Constant, in violation of petitioner's right to a public trial, the

trial Court stated in its Opinion denying post-trial motions:

> [T]he defendant's claim that he was somehow prejudiced because his wife was barred from appearing at *voir dire* is without merit. First, the record does not reflect that his wife was not permitted in the courtroom during jury selection. Nor does the record reflect that he ever raised with this Court the issue of his wife's presence. Accordingly, any claim concerning his wife's presence in the Courtroom during *voir dire* is waived. Moreover, the defendant has failed to indicate how he could possibly have been prejudiced if, as he contends, his wife was not permitted in to be present during jury selection. In the absence of any prejudice, the defendant would not be entitled to a new trial on the basis of any error in the selection of the jury.

Commonwealth's Answer to Petition for Writ of Habeas Corpus, Appendix, Vol. III, (ECF No.

7-8) at 9 of 29.

### 2.    Superior Court's Decision on Direct Appeal

The Superior Court of Pennsylvania affirmed the conviction and judgment of sentence.

On the Double Jeopardy issue, Superior Court held that "because Constant was granted a new

trial on his own Motion, he has waived his claim that the constitutional protection against double

jeopardy bars his retrial." *Id*. at 816. The Pennsylvania Supreme Court "has allowed no

exceptions under this procedural scenario, and we are bound by its holdings." *Id*.

With respect to exclusion of Mrs. Constant and the public in general from jury selection,

the Superior Court affirmed "albeit on different grounds": (1) "the trial court permitted the media

to attend *voir dire* proceedings"; (2) the proceedings were transcribed by a court reporter"; and

(3) in light of "the trial court's assessment of the space limitations, we cannot conclude that

Constant was denied his right to a public trial because of the exclusion of a member of the

general public, [his wife], from the proceedings. Accordingly, Constant is not entitled to relief on this claim." *Id*. at 817 and n.2.

Additionally, Superior Court explicitly declined to follow the "federal court decisions regarding the attendance of family members at court proceedings" upon which petitioner relied in his Brief for Appellant, which featured controlling United States Supreme Court precedent: *Waller v. Georgia*, 467 U.S. 39 (1984) and *Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise I")*, 464 U.S. 501 (1984).[4] Despite Mr. Constant's proffer of *Waller* and *Press-Enterprise Co. I* as the principal controlling precedent in his Brief for Appellant, Superior Court stated:

> Constant directs this Court's attention to several federal court decisions regarding the attendance of family members at court proceedings. Constant cited no Pennsylvania state court decisions supporting his contention. *See Commonwealth v. Giffin*, 407 Pa. Super. 15, 595 A.2d 101, 107 (1991) (stating that in the absence of a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel or a federal district court is not binding on Pennsylvania courts). We decline to apply the federal court's holdings under the circumstances presented in this case.

*Constant*, 925 Pa. Super. at 817, n.3.

---

[4] Constant's Summary of Argument in his Brief for Appellant in the Superior Court on direct appeal states: "The *voir dire* process was closed to the public, including Appellant's wife, thus denying him the right to a public trial. *See Press-Enterprise Co. v. Superior Court* . . . . Such a violation is structural in nature and requires reversal without proof of prejudice. *Waller v. Georgia* . . . ." Commonwealth's Answer to Petition for Writ of Habeas Corpus, Brief for Appellant in Superior Court, Exhibit 56, pt. 1 (ECF No. 8-1), at 18 of 46, 30-32 of 46; *Commonwealth v. Constant*, Brief for Appellant in Superior Court, 2006 WL 4552260 at *12.

On June 13, 2007, Mr. Constant filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on September 25, 2007. The time to petition the United States Supreme Court for a writ of certiorari expired on December 26, 2007.

### 3.  Post-Conviction Relief Act ("PCRA") Proceedings and PCRA Court Decision

Mr. Constant filed a timely PCRA Petition raising two claims: trial counsel was ineffective because the effect of filing and pursuing a motion for a new trial was to waive his claim that the Double Jeopardy Clause bars retrial; and the Pennsylvania trial and Superior Courts violated clearly established federal law which guarantees a defendant's right to a public trial, including jury selection. Section 2254 Motion, PCRA Petition, Exhibit 8 (ECF No. 1-8).

On January 15, 2010, the PCRA Court filed a Memorandum Opinion and Notice of Intention to Dismiss the PCRA Petition. Section 2254 Motion, Memorandum Opinion and Notice, Exhibit 9 (ECF No. 1-9). According to the Notice, the Court intended to deny PCRA relief on the Double Jeopardy claim because "the underlying claim does not have arguable merit. The charges would not have been dismissed had counsel sought dismissal because retrial was the proper remedy . . . [and counsel] was, therefore, not ineffective for failing to seek a dismissal." Section 2254 Motion, Memorandum Opinion and Notice of Intention to Dismiss, (ECF No. 1-9), at 5-6.

On the right to a public trial issue, the trial court stated its intention to deny PCRA relief for several reasons: (1) the issue had been previously litigated on direct appeal; (2) Superior Court accepted and relied on "this Court's factual determination that space was limited"; and (3) the Superior Court accepted the trial Court's finding that "the defendant was *not prejudiced* by

his wife's exclusion from a portion of jury selection." Section 2254 Motion, Memorandum Opinion and Notice of Intention to Dismiss, (ECF No. 1-9), at 6-7 of 8 (emphasis in original).

On January 19, 2010, the Supreme Court of the United States decided *Presley v. Georgia,* 558 U.S. 209, 130 S. Ct. 721 (2010), which held that the Sixth Amendment right to a public trial extends to *voir dire,* and finding that defendant's Sixth Amendment right to a public trial was violated by the trial court's exclusion of the lone courtroom observer, his uncle, from jury selection because of a generalized lack of space and its desire to prevent family members from "intermingling" with prospective jurors. The Supreme Court of the United States held that the "Supreme Court of Georgia's affirmance ***contravened this Court's clear precedents***," and that the Sixth Amendment ***right to public trial at voir dire was so "well settled under Press– Enterprise I and Waller . . . [that] this Court may proceed by summary disposition***." 558 U.S. at ___, 130 S.Ct. at 723-24 (Per Curiam) (emphasis added). Mr. Constant promptly filed a request to amend his PCRA petition to brief and discuss the Supreme Court's decision in *Presley*.

By Order of Court dated February 10, 2010, the PCRA Court denied Mr. Constant's PCRA Petition for the reasons stated in its Notice of Intention, and on March 24, 2010, denied his Motion to Amend PCRA Petition. In its Order denying the motion to amend, the PCRA Court indicated it had been aware of the *Presley* case when it made its ruling, but it was without authority to reverse the decision of Superior Court that the issue had been finally litigated. Section 2254 Motion, PCRA Court's Order, Exhibit 13 (ECF No. 1-13).

4.      **Superior Court Decision Affirming PCRA Court**

On appeal to the Pennsylvania Superior Court, the appellate court rejected both issues on their merits. *See* Section 2254 Motion, Superior Court Memorandum Opinion, Exhibit 14 (ECF No. 1-14).  On the Double Jeopardy claim, Superior Court simply stated: "In its Opinion, the PCRA court ably summarized the applicable law and properly concluded that Constant's final ineffectiveness claim lacks merit.  . . . After review of the parties' briefs and the certified record, we agree with the sound reasoning of the PCRA court as set forth in its Opinion, and affirm on this basis with regard to this issue." Section 2254 Motion, Superior Court Memorandum Opinion, Exhibit 14 (ECF No. 1-14), at 10-11.

On the right to a public jury selection procedure, Superior Court stated:

> We agree with the PCRA court that since Constant's allegation of a violation of his right to a public trial was previously litigated, it does not entitle him to relief. . . . Moreover, *Presley* is of no avail to Constant, as it was not decided until well after his direct appeal, and the Court in *Presley* did not announce that any part of its holding should apply retroactively on collateral review. *See, e.g., Tyler v. Cain*, 533U.S. 656, 663 (2001) (holding that a new rule of constitutional law is made retroactive to cases on collateral review only if the United States Supreme Court specifically holds it to be retroactively applicable to cases on collateral review) . . . . There is no merit to Constant's claim that *Presley* may be applied retroactively because 'its principles had been firmly established for approximately 20 years at the time of Mr. Constant's trial.' Reply Brief for Appellant at 7. Accordingly, Constant's first issue fails.

Section 2254 Motion, Superior Court Memorandum Opinion, Exhibit 14 (ECF No. 1-14), at 4-5 (additional citations omitted).

Superior Court's statement that there "is no merit to Constant's claim that *Presley* may be applied retroactively" is inaccurate: petitioner never "claim[ed] that *Presley* may be applied

retroactively," nor did he suggest in his initial or his reply brief that *Presley* announced "a new rule of constitutional law." To the contrary, petitioner stated that "issues of retroactivity are inapplicable" because "*Presley v. Georgia* . . . merely reaffirms the right to a public trial, including jury selection," a right that has been "firmly rooted since at least *Press Enterprise I*." Commonwealth's Answer to Petition for Writ of Habeas Corpus, Reply Brief of Appellant, Exhibit 74, (ECF No. 10-5) at 9-10 of 40.

**5**.      **Petition for Writ of Habeas Corpus**

Petitioner now raises the same issues for collateral relief: (1) trial counsel was ineffective for filing and successfully arguing a motion for a new trial, thereby waiving Mr. Constant's Double Jeopardy claim that his charges should be dismissed; and (2) the Pennsylvania Courts violated clearly established federal law which guarantees a defendant's right to a public trial, including jury selection.

In its Answer, the Commonwealth first recites the procedural history of these proceedings, and concedes that: (1) the Petition for Writ of Habeas Corpus is timely; (2) petitioner's claims have not been procedurally defaulted; and (3) his claims have been fully exhausted in state court. Answer to Petition for Writ of Habeas Corpus (ECF No. 5) at 19-23.

Addressing the merits, the Commonwealth argues the right to a public trial at *voir dire* claim must fail for three reasons: (1) the trial court "did not completely close" jury selection, since members of the media were permitted to attend; (2) a "lack of space prevented the general public, including petitioner's wife, from attending jury selection"; and (3) a transcript of the *voir dire* proceedings was made. *Id*. at 28-30.

Respondents implicitly disagree with Superior Court that consideration of *Presley* poses any sort of retroactivity problem, given that respondents briefed, and attempted to distinguish, the *Presley* decision on its merits. *Id*. at 27-28. Indeed, the Commonwealth acknowledges that "the *Presley* decision rested on a conclusion that *Waller v. Georgia*, . . . where the Court had held that the Sixth Amendment right to a public trial extended beyond the "actual proof at trial," . . . , when read in combination with *Press-Enterprise Company* . . . which found that *voir dire* must be open to the public as a matter of First Amendment rights, logically led to the conclusion that there was a Sixth Amendment right to public *voir dire*." *Id*. at 28.

All parties have consented to Magistrate Judge jurisdiction.[5] See Petitioner's Consent to Jurisdiction by a United States Magistrate Judge [ECF No. 16]; Respondents' Consent to Jurisdiction by a United States Magistrate Judge [ECF No. 15].

### III. STANDARDS GOVERNING FEDERAL HABEAS CORPUS REVIEW UNDER SECTION 2254

### 1. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review,

---

[5] Under the Federal Magistrate Judges Act ("Act"), a Magistrate Judge's jurisdiction may arise through the consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Such a referral gives the Magistrate Judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow,* 538 U.S. 580, 585 (2003*); In re Search of Scranton Hous. Auth*., 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996); *Burkett v. Love*, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Even if a state court refuses to consider the claim, it is still exhausted as long as the state court had the opportunity to address it. *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.1989). The petitioner has the burden of establishing that exhaustion has been satisfied. *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1989); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

Petitioner presented his claim to the state courts during his trial and PCRA proceedings. Thus, he has complied with the exhaustion requirement and the Court will review his claim.

**2.      Standard of Review for Exhausted Claims**

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Cullen v. Pinholster*, 563 U.S. ___ , 131 S.Ct. 1388, 1398 (2011).   A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result.   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir. 2008).   The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal

court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)).  The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274-75.  Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  A state-court decision "involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams*, 529 U.S. at 407.  A showing of clear error is not sufficient.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly.  *Thomas v. Varner,* 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S.___ , ___ ,131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *Felkner v. Jackson*, ___ U.S. ___, 131 S.Ct. 1305, 1307 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Harrington*, 131 S.Ct. at 786 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, ___ U.S. ___, 130 S.Ct. 1855, 1862 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous.").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

## IV.    APPLICATION

### A.  Double Jeopardy And Ineffective Assistance Of Counsel

To recap, petitioner's first trial ended in a guilty verdict on all but one of multiple charges. After the verdict, trial counsel learned that the then-presiding judge's tipstaff had improper and prejudicial communications with the jury during its deliberation, and he filed a motion for a new trial. After an evidentiary hearing, the Administrative Judge of the Criminal Division granted the motion for a new trial.

Petitioner now claims that, in finding trial counsel was not ineffective for filing and successfully arguing a motion for a new trial, in lieu of a motion to dismiss all charges based on quasi-judicial misconduct and the Double Jeopardy Clause, the Court of Common Pleas and the Superior Court of Pennsylvania violated clearly established federal law as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (inquiry required under Sixth Amendment is whether petitioner has demonstrated that (1) "counsel's performance was deficient" and (2) the "deficient performance prejudiced the defense.").

Analyzing this claim under Pennsylvania's ineffective assistance of counsel rubric, *see Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), which is essentially the same analysis as the *Strickland* analysis,[6] the trial court found that "the underlying claim does not have arguable merit. The charges would not have been dismissed had counsel sought dismissal because retrial was the proper remedy. . . . Accordingly, had counsel sought a dismissal on double jeopardy grounds rather than seeking a new trial, that request would have been denied. Counsel was, therefore, not ineffective for failing to seek a dismissal." Section 2254 Motion, Memorandum Opinion and Notice of Intention to Dismiss, (ECF No. 1-9), at 5-6. Superior Court affirmed, adopting the reasoning of the trial court.

Petitioner argues counsel was aware that the tipstaff's conduct "was so egregious that a dismissal on double jeopardy grounds was an appropriate remedy. . . . Yet, despite knowing this, he failed to file a Motion to Dismiss and instead inexplicably proceeded with his previously filed Motion for a New Trial. Following the evidentiary hearing, [the Court] granted Mr. Constant a new trial because the tipstaff had exerted an impermissible 'outside influence' on the jury which prejudiced Mr. Constant." Section 2254 Motion (ECF No. 1), at ¶ 70. Petitioner maintains that a

---

[6] Pennsylvania Courts break out the deficient performance prong of *Strickland* into two components: whether there was arguable merit to matters petitioner claims former counsel should have pursued, and if so, whether counsel had any reasonable basis in his client's interests for the tactic chosen; the prejudice prong is the same as in the *Strickland* formulation. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987). Pennsylvania's three-prong *Pierce* test applied to ineffective assistance of counsel claims is, in substance, identical to the *Strickland* test. *Jacobs v. Horn*, 395 F.3d at 107 n. 9; *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under AEDPA, 28 U.S.C. § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's *Pierce* analysis and decision involved an unreasonable application of *Strickland*. *Jacobs*, 395 F.3d at 107 n. 9; *Werts*, 228 F.3d at 204. And under section 2254(d)(2) of AEDPA, the relevant inquiry is whether the state court made unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel. *Bond v. Beard*, 539 F.3d 256, 279 (3d Cir. 2008).

motion to dismiss pursuant to the Double Jeopardy Clause would have been successful had it not been waived.  Section 2254 Motion (ECF No. 1), at ¶ 72.

Initially, the Court notes that the appropriate and customary remedy for improper jury contact by bailiffs, tipstaffs and third parties during deliberations, when a defendant learns of such contacts sometime after a jury verdict of guilt, is a new trial, not discharge.  *See Gov't. of Virgin Islands v. Gereau,* 523 F.2d 140, 150 n.25 (3d Cir. 1975) (collecting cases, including *Parker v. Gladden*, 385 U.S. 363 (1966) (bailiff expressed opinion on case to jurors)). Petitioner offers no authority to support the novel proposition that improper contact with the jury by a staff employee, not acting on behalf of the court, is grounds for dismissal under the Double Jeopardy Clause, especially where the verdict has already been rendered and the defendant finds out about the improper contact at some point down the road.

Moreover, in this case, the state courts found that, although the tipstaff used poor judgment and made improper communications which required a new trial, she did not act with ill-intentions to provoke a mistrial or coerce the verdict, nor was she acting on behalf of the court. This factual finding was made after an evidentiary hearing and the hearing judge's determination that the tipstaff was credible, and the federal courts cannot say that the finding was unsupported or was an unreasonable determination in light of the evidence.

The application of the Double Jeopardy bar requires a showing of the prosecutor's, or in this case, the "quasi-judicial" officer's, subjective intent to cause a mistrial in order to retry the case. *See United States v. Dinzey*, 259 Fed.Appx. 509, 510 (3d Cir. 2007) ("We have specifically held that when a defendant requests a mistrial, even in response to prosecutorial or judicial error, double jeopardy does not bar retrial, unless the error that prompted it was the result of bad-faith

conduct by a judge or prosecutorial misconduct.") (citing *United States v. Pharis*, 298 F.3d 228, 243 (3d Cir. 2002)). *See also United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988) (Double Jeopardy Clause will not bar retrial absent intent on the part of the prosecutor to subvert its protections); *United States v. Gilmore*, 454 F.3d 725, 729-30 (7th Cir. 2006) ("key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial . . . Intent is a critical element to understand when determining if a prosecutor's actions intentionally triggered the mistrial.").

It also is firmly established that the Double Jeopardy Clause does not bar retrial of a "defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). The "prosecution therefore is free to retry a defendant where the conviction is reversed due to 'trial error' such as '. . . prosecutorial misconduct.'" *Burks v. United States*, 437 U.S. 1, 15 (1978).

The Court finds the decision of the state courts was neither contrary to, nor an unreasonable application of, clearly established federal law, and was based upon a reasonable interpretation of constitutionally relevant facts. As the state courts held, dismissal is not an appropriate remedy under the Double Jeopardy Clause, and habeas relief is, therefore, not appropriate on this claim.

### B. The Right To Public Trial During Jury Selection

**1.** ***Waller v. Georgia*, 467 U.S. 39, 46 (1984); *Press-Enterprise Co. v. Superior Court of California, (Press-Enterprise I)*, 464 U.S. 501 (1984)**

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

The right of the accused to public trial ensures that "the public may see [the accused] is fairly dealt with . . . , and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *In re Oliver*, 333 U.S. 257, 270, 271 n. 25 (1948) (Black, J.) (quoting 1 Cooley, Constitutional Limitations 647 (8th ed. 1927)). The public trial guarantee discourages perjury and ensures that judges, lawyers and witnesses carry out their respective functions responsibly. *Waller v. Georgia*, 467 U.S. at 46 n.4.

"Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. A fair trial is the objective, and 'public trial' is an institutional safeguard for attaining it." *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring) (quoting *In re Oliver*, 333 U.S. at 266-273). *See generally State of Washington v. Wise*, ___ P.3d ___, 2012 WL 5870396 (Wash., November 21, 2012).[7] To that

---

[7] In *Wise,* the lead case in a recent trio of cases that drew largely from *Waller* and *Press-Enterprise Co. I*, the Washington Supreme Court succinctly summarized the purpose and protections of the Sixth Amendment right to public trial, as follows:

> A public trial is a core safeguard in our system of justice. Be it through members of the media, victims, the family or friends of a party, or passersby, the public can keep watch over the administration of justice when the courtroom is open. The open and public judicial process helps assure fair trials. It deters perjury and other misconduct by

end, trial courts "are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 558 U.S. at ___, 130 S.Ct. at 725.

As Justice Black observed in *In re Oliver*, while state and federal courts may have differed over which groups or categories of spectators could "properly be excluded from a criminal trial," courts uniformly have held that the accused cannot "be tried, convicted, and sent to jail, when everybody else is denied entrance to the court," and "all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." *In re Oliver*, at 271-72. "Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." *Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979). "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *United States v. LNU*, 575 F.3d 298, 305 (3d Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 771 (2009) (quoting *Gannett Co.*, 443 U.S. at 380).

---

participants in a trial. It tempers biases and undue partiality. The public nature of trials is a check on the judicial system, which the public entrusts to adjudicate and render decisions of the highest import. It provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities. The right to a public trial is so important, in fact, that its violation is an error deemed structural: the error affects the framework within which the trial proceeds. We cannot lightly abandon the values of a public trial.

*Wise*, ___ P.3d ___, 2012 WL 5870396, at *1.

The guarantee of open public proceedings in criminal trials applies to jury selection and *voir dire* examination of prospective jurors. *Press-Enterprise Co. v. Superior Court of California, (Press-Enterprise I)*, 464 U.S. 501 (1984) (*voir dire* must be opened to public under First Amendment), relied upon in *Presley. Waller* and *Press-Enterprise I*, decided in the same term in 1984, have long stood for the proposition that a defendant is presumptively entitled to the presence of the public at all adjudicative phases of criminal proceedings. *See Ayala v. Speckard,*131 F.3d 62, 69 (2d Cir. 1997) ("basic right [to a public trial] has a long and distinguished history," and applies not only to the evidence phase of a criminal trial, "but also to other adversary proceedings, such as a pretrial suppression hearing") (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (access to trial and pretrial hearings)); *Wells v. Hartley*, 2011 WL 7111822, *12 (C.D. Cal. 2011) ("Sixth Amendment right to a public trial . . . extends at least to those pretrial hearings that are an integral part of the trial, such as jury selection and motions to suppress evidence") (internal quotation marks omitted) (quoting *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010). *See also United States v. Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012) (right to public at sentencing hearing).

In *United States ex rel. Bennett v. Rundle*, 419 F.2d 599 (3d Cir. 1969), the Court of Appeals for the Third Circuit held that the Pennsylvania relator's right to a public trial was violated where a pretrial *Jackson v. Denno*, 378 U.S. 368 (1964), hearing on a motion to suppress a confession was closed to the public, which required the issuance of a writ of habeas corpus. In so holding, the Court of Appeals made the following historical observations:

> The right to a public trial is deeply rooted in history. Pennsylvania, where relator's trial occurred, was the first state to guarantee a public trial in its Constitution, adopted in 1776. But the principle long antedated the first Pennsylvania Constitution. This

> history is briefly sketched in *Commonwealth ex rel. Paylor v. Cavell*,
> 138 A.2d 246, 248-250 (Pa. Super.), *cert. denied* 358 U.S. 854 (1958).
> William Penn's Code of Laws of 1682 in the Frame of Government
> included a provision that 'all courts shall be open. . . .' The present
> Pennsylvania Constitution of 1874 provides in Article I, § 9: 'In all
> criminal prosecutions (by indictment or information) the accused hath
> a right to . . . a . . . speedy public trial . . . .'

419 F.2d at 605-06 (parallel citations omitted).

If, after applying the proper balancing of interests, the court determines that a defendant's right to a public trial has been violated, he need not show prejudice to obtain relief. Denial of the right is the sort of "structural error" that intangibly, but palpably, infests the entire proceeding and demands redress. *See, e.g., Waller*, 467 U.S. at 50 n.9 (because of the "great, though intangible, societal loss that flows from closing courthouse doors," the denial of a right to a public trial is considered a structural error for which prejudice is presumed) (quoting *People v. Jones*, 391 N.E.2d 1335, 1340 (N.Y. 1979). "A requirement that prejudice be shown 'would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury.'" *Waller*, 467 U.S. at 50, n.9 (quoting *Rundle*, 419 F.2d at 608)); *Johnson v. United States*, 520 U.S. 461, 468 (1997) (defendant's Sixth Amendment right to a public trial is of such importance that any error affecting it is deemed "structural," making denial of the right one of the "limited class of cases" where reversal is required without showing prejudice); *Neder v. United States*, 527 U.S. 1, 8 (1999) (characterizing denial of Sixth Amendment right to public trial as a "structural" error, citing *Waller*, 467 U.S. at 39).

The right to a public trial will "give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of

sensitive information." *Waller*,  467 U.S. at 45. "But to justify a denial of the public trial right, 'the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced. . . .'" *LNU*, 575 F.3d at 306 (quoting *Waller*, 467 U.S. at 48). In *Waller*, the Supreme Court defined the contours of the criminal defendant's Sixth Amendment right to a public trial, and ruled that the tests set out in *Press–Enterprise I* governed closures of pretrial proceedings (suppression hearing in *Waller*; jury selection in *Press–Enterprise I*), stating:

> In several recent cases, the Court found that the press and public have a qualified First Amendment right to attend a criminal trial. . . . We also have extended that right not only to the trial as such but also to the *voir dire* proceeding in which the jury is selected. *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984). . . .
>
> In each of these cases the Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care. We stated the applicable rules in *Press–Enterprise*:
>
>> "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

*Waller*, 467 U.S. at 44-45 (quoting *Press–Enterprise I*, 464 U.S. at 510).

The *Waller-Press-Enterprise I* test has both substantive and procedural components.  In *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994), the United States Court of Appeals for the

Third Circuit explained that there is a presumptive right of public access to *voir dire* proceedings,[8] and that:

> [the right to public trial] may not be abridged absent the satisfaction of substantive and procedural protections. On the substantive side, a court ordering closure must first establish that the competing interest asserted is not only "compelling," but also that it outweighs the First Amendment right of access. Second, it must determine that the limitations imposed are both necessary to and effective in protecting that interest. One part of establishing the necessity of a limitation is a consideration of alternative measures and a showing that the limitation adopted is the least restrictive means of accomplishing the goal. . . . On the procedural side, these determinations must be covered by specific, individualized findings articulated on the record before closure . . . .

38 F.3d at 1359.

### 2. *Presley v. Georgia*, 558 U.S. 209, 130 S.Ct. 721 (2010)

The *Presley* decision presents a set of circumstances remarkably similar to the instant case. In *Presley,* the petitioner sought certiorari on the grounds that his Sixth and Fourteenth Amendment right to a public trial was violated when the Supreme Court of Georgia affirmed the trial court's exclusion of the public, in particular his uncle, from *voir dire*. The trial court had excluded the public from jury selection because "there just isn't space for them to sit in the audience" (even though the uncle was the lone courtroom observer), and the court did not "want family members in the courtroom to intermingle with the jurors and sit directly behind the jurors where they might overhear some inadvertent comment or conversation." *Presley*, 558 U.S. at ___, 130 S.Ct. at 722. The Supreme Court of Georgia agreed that "the trial court certainly had an overriding interest in ensuring that potential jurors heard no inherently prejudicial remarks from

---

[8] Although the *Antar* Court directly addressed the media's First Amendment right of access, "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46

observers during *voir dire*," and rejected Presley's argument that the trial court was required to consider alternatives prior to closing the courtroom. *Id*. at 558 U.S. ___, 130 S.Ct. at 723.

The United States Supreme Court stated that the "Supreme Court of Georgia's affirmance ***contravened this Court's clear precedents***." *Id*. at 558 U.S. ___, 130 S.Ct. at 722 (emphasis added). In a Per Curiam Opinion, the Supreme Court explained:

> The case now before the Court is brought under the Sixth Amendment, for it is the accused who invoked his right to a public trial. An initial question is whether the right to a public trial in criminal cases extends to the jury selection phase of trial, and in particular the *voir dire* of prospective jurors. In the First Amendment context that question was answered in *Press–Enterprise I*. . . . Later in the same Term as *Press–Enterprise I*, the . . . *Waller* Court relied heavily upon *Press–Enterprise I* in finding that the Sixth Amendment right to a public trial extends beyond the actual proof at trial. It ruled that the pretrial suppression hearing must be open to the public because "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." . . .

> While *Press–Enterprise I* was heavily relied upon in *Waller*, the jury selection issue in the former case was resolved under the First, not the Sixth, Amendment. . . . In the instant case, ***the question then arises whether it is so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition***.

> ***The point is well settled under Press–Enterprise I and Waller***. . . .

558 U.S. at ___, 130 S.Ct. at 723-724 (citations omitted; emphasis added).

The Court reaffirmed that the substantive and procedural components of *Waller* must be applied "before excluding the public from any stage" of a criminal trial, and reiterated *Press-Enterprise I*'s admonition that trial courts are "obligated to take every reasonable measure to accommodate public attendance at criminal trials," and that absent "consideration of alternatives

to closure, the trial court could not constitutionally close the *voir dire*," even when alternatives are not offered by the parties. *Presley*, 558 U.S. at ___, 130 S.Ct. at 724-725 (quoting *Press–Enterprise I*, 464 U.S. at 505, 511). The Court also observed that the "conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from this Court's precedents but also from the premise that '[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.'" *Presley*, 558 U.S. at ___, 130 S.Ct. at 724 (quoting *Press–Enterprise I*, 464 U.S. at 505).

Finally, *Presley* observed there are "no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing *voir dire*," but even in such cases, "the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Presley*, 558 U.S. at ___, 130 S.Ct. at 725 (quoting *Press–Enterprise I*, 464 U.S. at 510).

### 3.  Application of Controlling United States Supreme Court Precedent

The Pennsylvania courts' decision on the right to public trial at jury selection is contrary to *Waller* and *Press–Enterprise I,* substantively and procedurally. Although petitioner briefed and argued *Waller* and *Press–Enterprise I* to Superior Court as controlling, "clearly established Federal law," the state courts disregarded that precedent. *Constant*, 925 A.2d at 817, n.3 ("We decline to apply the federal court's holdings under the circumstances presented in this case.").

The reasons given by the state courts for denying relief shifted from decision to decision, but, in order of appearance, were as follows: the record did not support Constant's claim that his

wife was barred from the courtroom during *voir dire*; Constant failed to establish prejudice from exclusion of his wife from jury selection; "the trial court permitted the media to attend *voir dire* proceedings"; the proceedings were transcribed by a court reporter; "space was limited"; and after filing his PCRA petition, the issue had been "previously litigated" adversely to petitioner. Neither alone nor in combination do these stated reasons support the closure of petitioner's *voir dire* to petitioner's wife and the general public, as discussed below.

### a. Structural error – prejudice is presumed

Most trial errors and most constitutional errors are susceptible of harmless error analysis, because the errors "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 148 (2006) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991)). Violation of the right to a public trial is not, however, in that class of errors.

Such a Sixth Amendment violation is in a second class of constitutional error called "structural defects," which "defy analysis by 'harmless-error' standards" because they affect "the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *Gonzalez–Lopez*, 548 U.S. at 148-49 (collecting structural error cases; quoting *Fulminante*, 499 U.S. at 309-10). "Violation of the public-trial guarantee is not subject to harmlessness review because 'the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance.'" *Gonzalez–Lopez*, 548 U.S. at 149, n.4 (quoting *Waller*, 467 U.S. at 49, n.9).

The trial Court stated in its Opinion In Support of Denial of Post-Trial Motions that "the defendant has failed to indicate how he could possibly have been prejudiced if, as he contends, his wife was not permitted in to be present during jury selection. In the absence of any prejudice, the defendant would not be entitled to a new trial on the basis of any error in the selection of the jury." Commonwealth's Answer to Petition for Writ of Habeas Corpus, Appendix, Vol. III, (ECF No. 7-8) at 9 of 29. Superior Court "agree[d] with the sound reasoning of the PCRA court as set forth in its Opinion, and affirm[ed] on this basis with regard to this issue." Section 2254 Motion, Superior Court Memorandum Opinion, Exhibit 14 (ECF No. 1-14), at 10-11. The state Courts' finding (no prejudice) is irrelevant, and their conclusion (no new trial) is incorrect, given that the structural defect in the criminal proceedings – violation of the right to a public trial - obviates petitioner's need to show prejudice in order to obtain relief. *See Waller*, 467 U.S. at 50 n.9; *Johnson*, 520 U.S. at 468; *Neder*, 527 U.S. at 8.

**b. No overriding or substantial reason justified closure**

The only substantive reason articulated by the trial court for closing *voir dire* to the public was "[w]e don't have space." Commonwealth's Answer to Petition for Writ of Habeas Corpus (ECF No. 5), at 26; Section 2254 Motion, Jury *Voir Dire* Transcript, Exhibit 7 (ECF No. 1-7). A generalized lack of space will rarely, if ever, suffice to justify any but the most temporary closures, if in fact the room is filled to capacity. *See, e.g, Bucci v. United States*, 662 F.2d 18, 26 (1st Cir. 2011) ("even if the courtroom were completely filled with prospective jurors, it would likely not justify the closure in this case. . . . *Presley* made clear that alternative methods of increasing the available public seating, such as splitting the venire, must be adopted if reasonable."); *Owens v. United States*, 483 F.3d 48, 62 (1st Cir. 2007) (in absence of on-the-

record findings, "it is difficult for us to discern whether it was necessary for the entire courtroom to be cleared of spectators to permit the jury pool to enter. . . . Most justifications for trial closure have involved the need to protect witnesses or maintain courtroom order. . . . [and not] on the basis of convenience to the court. . . . Given the strong interest courts have in providing public access to trials, the district court could have considered whether a larger courtroom was available for jury selection."). *Cf. United States v. Patton*, 2012 WL 5200568, *3 (3d Cir. 2012) (to extent members of defendants' families were temporarily denied entry into the courtroom "because it was filled to capacity, no constitutional violation occurred." . . . "[N]o single member of the public has a right to gain admittance to a courtroom if there is no available seat. That is, so long as the public at-large is admitted to the proceedings, the Sixth Amendment does not guarantee access to unlimited numbers") (quoting *Gibbons v. Savage*, 555 F.3d 112, 116 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 61 (2009)).

Initially, the "lack of space" finding or "assessment" is *necessarily contradicted* by the undisputed record facts. The record of *voir dire* affirmatively demonstrates that Mrs. Constant and one member of the press had actually been sitting in attendance in the jury selection room the morning of the first day of jury selection. It is a physical impossibility for Mrs. Constant to have been present and sitting in the jury selection room if there was no space for her to have been there. By the same logic, on the second day there had to have been at least two open seats, since there was no member of the media or the public present.[9] The state courts' finding that

---

[9] Moreover, trial counsel avers in his affidavit that there were plenty of additional open seats in the row of seats by the door, and nothing in the record or in respondents' briefs in state or federal court dispute that averment.

there was insufficient space was based on an objectively unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[10]

### c. No substantial reason permitted closure of *voir dire* even under a modified *Waller* test for "partial closures"

The Commonwealth suggests that the facts and circumstances of this case fit a variation on the *Waller* test that has been accepted by most Courts of Appeals when a closure of the proceeding is "partial." "In partial closure cases - i.e., where courtroom access is restricted but some members of the public are permitted to attend - this court and several of our sister circuits have held that a 'substantial' interest, rather than a 'compelling' one, will justify partial closure." *Bucci,* 662 F.3d at 22. *See also United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989) (when a trial judge orders partial, as opposed to total, closure of a court proceeding, a "substantial reason" rather than *Waller's* "overriding interest" may justify the closure); *United States v. Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012) ("less rigorous standard applies where a partial closure is at issue: A partial closure is justified where 'the trial judge had a substantial reason for the closure,' and where 'the closure was narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered.'") (quoting *Sherlock*, 962 F.2d at 1357); *Cosentino v. Kelly*, 102 F.3d 71, 73 (2d Cir. 1996) (no constitutional violation arising from partial closure, as "[t]he order allowed access to most members of the public . . . and

---

[10] The trial Court initially found the issue waived because the record did "not reflect that [petitioner's] wife was not permitted in the courtroom during jury selection. Nor does the record reflect that he ever raised with this Court the issue of his wife's presence." Commonwealth's Answer to Petition for Writ of Habeas Corpus, Appendix, Vol. III, (ECF No. 7-8) at 9 of 29. The transcript from *voir dire* proves otherwise, however, and the trial court did not continue to rely on this finding, nor did Superior Court and the Commonwealth.

many members of the defendants' families, and only barred those individuals who, in the court's judgment, posed a threat to the orderly conduct of the second trial").

Respondents argue the trial court merely imposed "some limitation" on "the public's right to access petitioner's *voir dire*. Indeed, the judge did not completely close jury selection [because] 'the press can come in, but members of the general public are not permitted.'" Commonwealth's Answer to Petition for Writ of Habeas Corpus (ECF No. 5), at 29. Had he completely closed *voir dire* to the public, the argument continues, the "overriding interest" substantive component of *Waller* would apply. *Id*. at n.20. By inverse implication, this oblique reference to the "overriding interest" substantive component of *Waller*, as being triggered by "complete closure," seems to invoke the "partial closure" modification, in which a "substantial interest" may be sufficient to justify such closure.

The Commonwealth does not develop this argument, however, and does not discuss these or other "partial closure" cases recognizing and applying the modified substantive component of the *Waller* test, nor does it attempt to show how the facts and circumstances of this case qualify as a partial closure. In contrast to the partial closure cases, this case involves a deliberate decision and affirmative act by the trial judge, over the objection of counsel, to affect the total closure of jury selection to the general public as soon as the Court became aware of petitioner's wife in attendance on the first day of *voir dire*. The trial Court unequivocally stated that "members of the general public are not permitted in jury selection" in the dedicated jury selection room, although members of the media, a subcategory of the public, were permitted. Commonwealth's Answer to Petition for Writ of Habeas Corpus, VDT 165-167, (ECF No. 5), at 25-26.

"The media" is not "the public," however, and permission for the media to attend *voir dire* is not automatically a valid substitute for the general public's or a family member's right to attend. *See United States v. Villagomez*, 708 F.Supp.2d 1105, 1126 (D.N.Mariana Islands 2010) ("public trial guarantee is not violated if an individual member of the public cannot gain admittance to a courtroom because there are no available seats. The guarantee will already have been met, for the public will be present in the form of those persons who did gain admission. In short, a 'public' trial is a trial that members of the general public, the defendant's family members, and the press are allowed to attend, at least in some numbers.") (quoting *Estes*, 381 U.S. at 588-89 (Harlan, J., concurring)) (additional internal quotation marks omitted); *Drummond v. Houk,* 761 F.Supp.2d 638, 672 (N.D. Ohio 2010) (quoting *Douglas v. Wainwright*, 714 F.2d 1532, 1542–43 (11th Cir. 1983), vacated and remanded, 468 U.S. 1206 (1984), reaffirmed, 739 F.2d 531 (11th Cir. 1984) (fact that a trial court permitted the media to be present during a partial closure of the courtroom does not guarantee media presence nor does it automatically cure Sixth Amendment deficiencies). See *also United States v. LNU*, 575 F.3d at 298 (requirement of public trial satisfied by "opportunity of members of the public **and** the press to attend the trial and to report what they have observed") (quoting *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 610 (1978) (First Amendment grants press "no right to information about a trial superior to that of the general public.")).

The media, members of defendants' and victims' families, and court observers without any particular stake in the outcome each are subcategories of the general public, but precedent does not permit the courts to grant entry to one category while denying access to others in the absence of a compelling reason, careful balancing of interests, narrow tailoring of the closure, consideration of alternatives and adequate findings.

Further, the trial court's exclusion of the public was not limited to Mrs. Constant. Rather, it was a blanket prohibition of the general public for 1½ of 2 days of jury selection. The trial Court stated: "Unless [members of the public] have specific approval and there is a reason for them to be there, they are not going to be there, and of course the press can come in, but members of the general public are not permitted in jury selection." Commonwealth's Answer to Petition for Writ of Habeas Corpus, VDT 165-167, (ECF No. 5), at 25-26. While Mrs. Constant was in the jury selection room the morning of the first day of jury selection, she was expulsed from the room immediately after the trial judge became aware of her presence. On the second day, no member of the general public and no member of the media were present for jury selection.

Even if this Court were to agree that the closure of *voir dire* was "partial," the trial Court failed to articulate a "substantial interest" that might, consistent with the modified *Waller* Sixth Amendment standards, permit such a broad, categorical exclusion of the general public for three-fourths of the jury selection. A generalized "lack of space" (affirmatively contradicted on the record) is simply insufficient.

Furthermore, even if this Court agreed that there was a partial closure which was supported by a substantial interest, the remaining components of the *Waller* standards are not modified in "partial closure" cases, and have not been satisfied in this case. In *Walton v. Briley,* 361 F.3d 431 (7th Cir. 2004) (Bauer, Posner, and Easterbrook, C.J.), a partial closure case, the district court denied a state prisoner's section 2254 petition for habeas relief, claiming his trial in the Cook County Circuit Court was conducted in violation of his Constitutional right to a public trial because the first two sessions of trial were held in evening hours after the courthouse had

closed. The Court of Appeals for the Seventh Circuit reversed the district court and granted the writ, stating:

> While criminal trials that are closed to the public are strongly disfavored, they are not forbidden. A party seeking to bar the court's doors to the public must satisfy a four-part test: (1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure. [*Waller*] at 48, 104 S.Ct. 2210. The record of this case fails to show that the [state trial] court even considered the four-part test.

361 F.3d at 433.

In *Yung v. Walker*, 341 F.3d 104 (2d Cir. 2003) (Pooler, Sotomayor, C.J., and Kaplan, D.J., sitting by designation), a partial closure case, the Court of Appeals for the Second Circuit applied *Waller* to a partial closure of a 1999 trial by the state trial judge for the safety of a testifying undercover officer. The trial court had excluded members of defendant's family for two of four days of the trial. After exhausting his state post-conviction opportunities, the petitioner filed a Petition for Writ of Habeas Corpus arguing that closing the courtroom to his family violated his Sixth Amendment right to a public trial.

The federal district and circuit courts applied the deferential AEDPA standards to the state courts' closure decision, giving the state court adjudication a high degree of deference, presuming the state court factual findings correct unless petitioner offered clear and convincing evidence of their incorrectness, and overturning a state court adjudication only if it (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Id.* at 109; 28 U.S.C. § 2254(d) and (e).

The Court of Appeals found that *In re Oliver* and *Waller* supplied the "clearly established Federal law" in, stating:

> The Supreme Court rarely has spoken on courtroom closure as a violation of the right to a public trial. In 1948, the Court decided *In re Oliver*. In that case, the Supreme Court reversed a contempt conviction imposed by a judge in a proceeding closed to everyone except perhaps a prosecutor and a court reporter. *In re Oliver*, 333 U.S. at 259, 68 S.Ct. 499. The court found that this practice violated the defendant's right to a public trial, *id.* at 272-73, 68 S.Ct. 499, after noting in dicta that "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged," *id.* at 271-72, 68 S.Ct. 499.

> Thirty-six years later, the Supreme Court considered closure during a suppression hearing, held that the right to a public trial is not absolute, and established the four-part test applicable to a complete courtroom closure: the prosecution must show an overriding interest likely to be prejudiced by an open courtroom; the closure must be no broader than necessary; the court must consider alternatives to a complete closure; and the court's findings must be adequate to support the closure. *Waller*, 467 U.S. at 45.

> The Supreme Court never has applied the *Waller* factors in the context of a state court's exclusion of family members. Nevertheless, ***Waller's second mandate*** - that the closure be no broader than required to protect the overriding interest at stake - ***necessarily applies to both the duration of the closure and to the portion of the public to be excluded.*** Thus, *Waller* prevents a court from denying a family member's request to be exempted from a courtroom closure order unless the court is convinced that the exclusion of that particular relative is necessary to protect the overriding interest at stake. Indeed, it would be an unreasonable interpretation of *Waller* for a court to deny such a request if the exclusion of that particular relative, under the specific circumstances at issue, is not necessary to promote the overriding interest.

*Id.* at 110-111 (emphasis added).

*See also United States v. Gupta, (Gupta II),* 699 F.3d 682, 687 (2d Cir. 2012) ("district court's intentional exclusion of the public from the courtroom during the entirety of *voir dire,* without prior consideration of the factors identified in *Waller* . . . . , violated Gupta's Sixth Amendment right to a public trial."); *Rivera,* 682 F.3d at 1236 (partial closure may be justified where trial judge had "substantial reason for the closure," and it was "narrowly tailored," and additionally, "there are three procedural requirements that must be satisfied before a trial court may order a partial closure: (1) the court must hold a hearing on the closure motion; (2) the court must make factual findings to support the closure; and (3) the court must consider reasonable alternatives to closing the courtroom."); *Sowell v. Sheets,* 2011 WL 4914911, *17 (S.D. Ohio 2011) (collecting circuit court cases; "The circuits agreed . . . that the remaining three parts of the *Waller* test should be applied without modification."); *Drummond,* 761 F.Supp.2d at 679 ("Habeas courts, relying on *Waller,* repeatedly find the Sixth Amendment violated where the trial court failed to articulate specific, reviewable findings to justify a partial courtroom closure.") (collecting numerous section 2254 cases).

### d. Closure was not "trivial"

There is a limited "triviality exception" to the general rule that closure of the courtroom violates the right to a public trial and prejudice will be presumed.[11] The United States Court of Appeals for the Third Circuit recently summarized this exception in *United States v. Patton,* 2012 WL 5200568 (3d Cir. October 23, 2012), as follows:

---

[11] Respondents do not invoke the triviality exception. However, inasmuch as the exception bears some resemblance to the partial disclosure cases, the Court will address the "triviality exception" to the general rule that closure of the courtroom violates the right to a public trial.

The Sixth Amendment guarantees the "accused . . . the right to a . . . public trial . . . . This right, however, is not absolute. An unjustified courtroom closure only infringes a defendant's Sixth Amendment rights if it undermines the values the Supreme Court identified in *Waller v. Georgia*, 467 U.S. 39 (1984) as fundamental to the public trial guarantee. *United States v. Gupta [Gupta I]*, 650 F.3d 863, 867 (2d Cir. 2011), *reh'g en banc granted* Sept. 15, 2011 (quoting *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)). If the closure did not jeopardize or subvert these values, which (1) ensure a fair trial, (2) remind the government and judge of their responsibility to the accused and importance of their functions, (3) encourage witnesses to come forward, and (4) discourage perjury, it did not offend the Sixth Amendment because the closure is considered trivial. *Id*. at 867 . . .

In determining whether a closure was trivial, we examine the actions of the court and their effect on the conduct of the trial. *Gupta*, 650 F.3d at 867 (citations omitted). Although triviality is not determined by a single factor, *Morales v. United States*, 635 F.3d 39, 43 n.7 (2d Cir. 2011), a closure was trivial and did not implicate the values advanced by the public trial guarantee when the trial judge was unaware of the closure and it was limited in both scope and duration. *See United States v. Al–Smadi*, 15 F.3d 153, 154 (10th Cir. 1994) (concluding that before a defendant can claim a violation of his Sixth Amendment rights, "some affirmative act by the trial court meant to exclude persons from the courtroom" must occur); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975).

*Patton*, 2012 WL 5200568, *2-*3 (additional citations omitted).

The *Patton* Court found defendants' allegations that family members had not been permitted to enter the courtroom during jury selection to be "amorphous," and the record of any courtroom "closure" ambiguous, at best. It was not the trial Court's customary practice to close the courtroom to anyone during *voir dire,* and there was no showing that the Court was even aware of anyone being temporarily kept in the hallway. In light of all the facts and circumstances, the Court of Appeals for the Third Circuit held: to the "extent that members of [defendants'] families were denied entry into the courtroom because it was filled to capacity, no

constitutional violation occurred." *Patton*, 2012 WL 5200568, *3 (citing *Gibbons*, 555 F.3d at 116).

In *United States v. Greene*, 431 Fed.Appx. 191 (3d Cir. 2011), certain individuals had been excluded from the courtroom by a Court Security Officer (CSO) during jury roll call at a time when the judge was not present in the courtroom, and Greene claimed this violated his right to a public trial. The Court of Appeals held that not "every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution or requires reversal . . . , no matter how brief the deprivation or how trivial the proceedings that occurred during the period of deprivation." *Id*. at 195 (quoting *Gibbons*, *supra*, and *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)). The *Greene* Court also noted that other courts "have continued to conduct triviality analyses in the wake of *Presley's* holding that the Sixth Amendment extends to *voir dire* proceedings," and agreed with those courts. *Id*. at 195-96.

The triviality exception was triggered in *Greene* because closure "was limited in both duration and scope," it "occurred unbeknownst to the trial judge" during the ministerial roll call of the jury, counsel for "Greene never raised an objection and was thus complicit in allowing the court's unawareness of the closure to persist. . . , [and] the closure was not subsequently ratified by any affirmative act of the court." *Id*. at 196-97.

Reviewing *Patton* and *Greene,* two points are salient. First, key to a finding of triviality is the trial judge's lack of an affirmative act, awareness or ratification of any closure by court personnel. Courts have placed "considerable emphasis on the role of the trial judge in assessing whether a closure is of constitutional magnitude and have resisted ascribing to judges the unauthorized actions of courthouse personnel." *Id*. at 196. The absence of "some affirmative act

by the trial court meant to exclude persons from the courtroom," or ratification of a court employee's or security officer's unilateral decision makes it more likely that closure of a particular proceeding will be deemed trivial. *Id*. (collecting cases). *See also United States v. Saldana*, 473 Fed.Appx. 118 (3d Cir. March 30, 2012) (companion case to *Greene;* "We noted there, as we do here, that the partial closure was limited in both duration and scope and occurred unbeknownst to the trial judge. . . . Again, we hold that the District Court properly concluded that Saldana was not denied his right to a public trial.").

The second point is that the Court of Appeals for the Third Circuit recognizes and credits the triviality exception as a creature crafted initially and propagated by the Court of Appeals for the Second Circuit. *See, e.g., Gupta I, Gibbons, Peterson, supra*. The continued viability of this exception is currently in question in the Second Circuit where the Court of Appeals has quite recently reconsidered and, at a minimum, significantly narrowed its reach. *United States v. Gupta*, (*Gupta II*), 699 F.3d at 688-89. In *Gupta II*, the Court of Appeals for the Second Circuit reconsidered and vacated its previous ruling that, pursuant to the *Gibbons-Peterson* (cited with approval in *Greene*) so-called "triviality" exception, any Sixth Amendment violation of the right to a public trial was *de minimis*, stating:

> This appeal presents the narrow question of whether the district court's intentional closure of the courtroom during *voir dire* violated Defendant – Appellant Raghubir K. Gupta's right to a public trial. In *Waller v. Georgia*, . . . the Supreme Court held that, consistent with the Sixth Amendment, a trial court may exclude the public from the courtroom only upon satisfaction of a four-factor test . . . . Because the lower court here did not analyze the *Waller* factors prior to closing the courtroom, the closure was unjustified. In prior decisions of this Court, we have suggested that an unjustified closure, under certain and limited circumstances, may not require reversal of the defendant's conviction. *See, e.g.,*

> *Gibbons v. Savage* . . . . Whatever the outer boundaries of this
> doctrine may be, however, they do not encompass the present case.
> . . . As should be clear from the above, the importance of the public
> trial right dictates that, before closing a courtroom to the public, a
> trial court must inform the parties of its intentions and make
> explicit *Waller* findings. Failure to comply with this procedure
> will, in nearly all cases, invite reversal. . . . Here, the district court's
> intentional, unjustified exclusion of the public for the entirety of
> *voir dire* was neither brief nor trivial, and thus violated Gupta's
> Sixth Amendment right to a public trial. We therefore VACATE
> his conviction and REMAND for further proceedings not
> inconsistent with this opinion.

*Gupta II*, 699 F.3d at 684, 690 (additional citations omitted).

Despite the diminished status of the triviality exception in the Second Circuit, our Court of Appeals held that it remains viable after *Presley*.[12]  Viable or not, the facts and circumstances of this case do not give rise to a plausible application of the triviality exception.

Reasonably minded jurists could not consider the trial Court's deliberate, near total closure of petitioner's jury selection to petitioner's wife and the general public, over objection by counsel, to be "trivial," as that exception has been developed. *Compare Patton, Greene* and *Saldana, supra*, *with Rivera*, 682 F.3d at 12 (district court's exclusion of Rivera's family members from sentencing hearing "implicated important values served by the Sixth Amendment.

---

[12] *Patton, Greene and Saldana, supra,* are "Not for Publication." According to the Third Circuit's Internal Operating Procedures, 5.3, Not Precedential Opinions, an "opinion, whether signed or per curiam, that appears to have value only to the trial court or the parties is designated as not precedential and unless otherwise provided by the court, it is posted on the court's internet website", and 5.7, Citations, the "court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court." *But see* Fed. R. App. 32.1 (after January 1, 2007, a "court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like . . .").  Rule 32.1 "addresses only the citation of federal judicial dispositions that have been designated as 'unpublished' or 'non-precedential.'" Advisory Committee Notes, 2006 Adoption.

. . . [T]he district judge imposed Rivera's sentence free from the watchful eyes of Rivera's family members, and thus without the most significant reminders of the importance of the court's sentencing function and the gravity of its actions. The closure was therefore not trivial.") *and Owens*, 483 F.3d at 62 ("this was not a mere fifteen or twenty minute closure; rather, Owens' trial was allegedly closed to the public for an entire day while jury selection proceeded. Jury selection is, of course, a crucial part of any criminal case.").

### e.   No alternatives were considered prior to closure

The trial Court and the Superior Court did not, on the state court record, consider alternatives to closure, and did not purport to have done so in their decisions, unless permission for the press to attend could be considered an "alternative" to permitting attendance by the general public. As we have seen, however, the "public" and the "press" are not interchangeable categories, and the media is not an acceptable substitute for the general public or family members. Nor is the fact that the jury selection was transcribed an adequate alternative to the presence of the public – if it were, any hearing with a court reporter could be closed to the public. *See, e.g.*, *United States v. Simone*, 14 F.3d 833 (3d Cir. 1994) ("provision of a transcript, however, does not somehow allow for a more lenient balancing test" for closure of proceedings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1072 (3d Cir. 1984) ("[T]he availability of a trial transcript is no substitute for a public presence at the trial itself. As any experienced appellate judge can attest, the cold record is a very imperfect reproduction of events that transpire in the courtroom.") (internal quotation marks omitted).

It would seem that a dedicated jury selection room, with 200 or so prospective juror seats and a row of seats for the media, attorneys and the public, reasonably could accommodate public

attendance. (The presiding judge apparently summoned prospective jurors in groups of 50 in this case.) Because the state courts did not consider any alternatives to closure, closure was not in compliance with the substantive and procedural protections of the Sixth Amendment. *See Presley*, 558 U.S. at ___, 130 S.Ct. at 725 ("Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. . . . [P]ossibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members."); *United States v. Agosto-Vega*, 617 F.3d 541, 547 (1st Cir. 2010) (trial court "could have seated members of the public as members of the venire were excused" or it could have "admonished the members of the venire and the public against inappropriate conduct," if this concern existed).

### f. No factual findings or balancing of interests articulated before closure

Finally, the trial Court did not conduct the necessary balancing of interests and articulation of findings and specific reasons for closure prior to excluding the public from jury selection, nor did Superior Court perform such analysis on appeal. *See Agosto-Vega,* 617 F.3d at 547 ("of course, if despite such measures [the court] still considered that the closing was required by the circumstances, it was required to substantiate its actions by specific findings in support thereof); *Antar*, 38 F.3d at 1362 ("court here did not satisfy its burden of placing findings on the record which clearly established that closure was necessary to protect an overriding interest. On this basis alone, the order sealing the transcripts was improper."); *Drummond*, 761 F.Supp.2d at 679 ("Habeas courts, relying on *Waller*, repeatedly find the Sixth Amendment violated where the trial court failed to articulate specific, reviewable findings to justify a partial courtroom closure.") (numerous cases collected); *Gupta II,* 699 F.3d 684-85 (same); *Judd v. Haley*, 250

F.3d 1308, 1318 (11th Cir. 2001) (affirming grant of habeas relief where motion for courtroom closure took place off record, in part because there were no reviewable findings of trial court justifying closure); *Davis v. Reynolds*, 890 F.2d 1105, 1112 (10th Cir. 1989) (affirming grant of habeas relief because "trial court improperly violated [petitioner's] Sixth Amendment right to a public trial by failing to articulate specific, reviewable findings").

### g. Violation of petitioner's right to public trial

After careful consideration of the Petition for Writ of Habeas Corpus, the Commonwealth of Pennsylvania respondents' Answer, numerous exhibits attached by the parties, and the original state court records, and mindful of the deferential standard of review of decisions of state courts mandated by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), as amended, the exclusion of petitioner's wife and the general public from jury selection was contrary to, or an unreasonable application of, long standing, controlling United States Supreme Court precedent, and violated Mr. Constant's Sixth Amendment right to a public trial. The error is structural, and prejudice is presumed.

### V.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion Under 28 U.S.C. § 2254 To Vacate And Set Aside Sentence By A Person In State Custody (ECF No. 1) in part, and deny it in part. A separate order will follow.

### Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a

habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability (COA) has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).

The court concludes that jurists of reason would not find debatable this Court's determination that habeas relief is not warranted on petitioner's double jeopardy claim. Accordingly, there is no basis upon which to issue a certificate of appealability.

<u>s/ Cynthia Reed Eddy</u>
United States Magistrate Judge
Cynthia Reed Eddy, J.

December 10, 2012

cc:  all ECF registered counsel